IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| CARLANDO MUKES, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| CITY OF MILWAUKEE, Milwaukee Police | ) | |
| Chief EDWARD FLYNN, Milwaukee Police | ) | |
| Sergeant JASON MUCHA, Former Milwaukee | ) | |
| Police Officer MICHAEL VAGNINI, and | ) | |
| Milwaukee Police Officer PAUL MARTINEZ, | ) | |
| | ) | |
| Defendants. | ) | Jury Demand |

**COMPLAINT**

Plaintiff, CARLANDO MUKES, by his attorneys, People's Law Office and The Shellow Group, for his complaint against Defendants CITY OF MILWAUKEE, Milwaukee Police Chief EDWARD FLYNN, Milwaukee Police Sergeant JASON MUCHA, Former Milwaukee Police Officer MICHAEL VAGNINI, and Milwaukee Police Officer PAUL MARTINEZ, states:

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a municipal corporation located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**Parties**

4. Plaintiff Carlando Mukes is a 32 year old African American resident of the State

1

of Wisconsin and the City of Milwaukee.

5. Defendant City of Milwaukee is a Wisconsin municipal corporation and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment. Defendant City of Milwaukee is additionally responsible for the policies and practices of the Milwaukee Police Department.

6. Defendant Edward Flynn is and was at all times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Flynn is being sued in his individual and official capacities.

7. Defendant Jason Mucha was at all times relevant to this action a sergeant in the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Mucha is being sued in his individual capacity.

8. Defendants Michael Vagnini and Paul Martinez were at all times relevant to this action employed as police officers in the Milwaukee Police Department and each was acting under color of law and within the scope of his employment. Each of these Defendants is being sued in his or her individual capacity.

**Facts**

9. Carlando Mukes is a paraplegic. He has been paralyzed from the waist down since 1999. He has to use a wheelchair to get around, and has to wear adult diapers.

10. On June 13, 2008, at approximately midnight, Plaintiff was sitting in his wheelchair in a parking lot on Teutonia Avenue in Milwaukee talking to his friend, when he was approached by Defendants Michael Vagnini and Paul Martinez, who drove up next to him in an unmarked police car.

11. Defendants Vagnini and Martinez had no probable cause or reasonable suspicion

2

to believe that Plaintiff had committed or was committing any offense.

12. Defendant Vagnini asked Plaintiff, "What do you have on you?"

13. Plaintiff raised his arms in the air and told Defendants Vagnini and Martinez that he did not have anything on him.

14. Defendant Vagnini patted down Plaintiff's pants pockets without Plaintiff's consent, found approximately $50, and said, "This is drug money."

15. Defendants Vagnini and Martinez each grabbed one of Plaintiff's arms and Defendant Martinez said, "Maybe it's in his adult diaper."

16. Defendant Martinez, who had no probable cause or reasonable suspicion that Plaintiff possessed drugs or contraband on or about his person, reached his hand inside Plaintiff's adult diaper, and groped Plaintiff's genitals.

17. Plaintiff did not have any drugs or contraband in his adult diaper or anywhere on his person.

18. Defendant Martinez is not a health care professional, and he conducted the invasive and unreasonable search in an unsafe, unhygienic, and intentionally humiliating fashion, in a public thoroughfare, with no privacy.

19. Defendants Martinez and Vagnini had no warrant to conduct such a search on Plaintiff.

20. Defendant Martinez then produced a bag of cocaine and asked Plaintiff if it was his.

21. Defendant Vagnini, using a racial slur, then told Plaintiff that they had finally got something on him.

22. When Plaintiff insisted that the drugs were not his, Defendant Vagnini hit

3

Plaintiff in the forehead with his flashlight, and Defendants Vagnini and Martinez dumped Plaintiff out of his wheelchair onto the ground.

23. Defendant Jason Mucha, well aware of Defendants Vagnini and Martinez's modus operandi, pattern and practice of conducting invasive and unreasonable searches on African American men, was present while Defendants Vagnini and Martinez searched and physically abused Plaintiff, stood by watching, and took no action to intervene on Plaintiff's behalf, even though he had the duty, ability, and opportunity to do so.

24. Defendants left Plaintiff lying on the ground in the rain for approximately ten minutes.

25. Plaintiff's leg began throbbing and when he asked to be taken to the hospital, Defendant Vagnini rammed his knees into Plaintiff's lower back.

26. Defendants Vagnini and Martinez then picked Plaintiff up off of the ground, and threw him into the back of a police squadrol.

27. Defendants Vagnini and Martinez left Plaintiff unsecured on the floor of the squadrol without his wheelchair.

28. Plaintiff was taken to St. Mary's hospital where he received treatment for his injuries.

29. Because Defedants Vagnini and Martinez did not properly secure him in the back of the squadrol, Plaintiff was bounced around the compartment of the vehicle during the drive to the hospital, causing his body to strike various parts of the squadrol.

30. Defendants Vagnini, Martinez and Mucha made out false and incomplete official reports and gave a false and incomplete version of event to their superiors and prosecutors, all in order to cover up their own misconduct.

4

31. Plaintiff was charged with possession of a controlled substance and resisting an officer. The criminal charges were ultimately dismissed.

32. As a direct and proximate result of Defendants' actions, as detailed above and below, Plaintiff suffered and/or continues to suffer, *inter alia*, loss of liberty, bodily injury, pain and suffering, extreme mental distress, anguish, humiliation, shame and fear.

### *Criminal Charges Against Vagnini and Other Milwaukee Officers and Vagnini's Conviction*

33. In 2012, the Milwaukee District Attorney's Office conducted a secret investigation into allegations of illegal body cavity and strip searches by Milwaukee police officers, during which they interviewed, and reviewed statements of, dozens of victims and witnesses.

34. In October of 2012, the State of Wisconsin charged Defendant Vagnini and three other Milwaukee police officers with multiple felonies and misdemeanors related to illegal body cavity and strip searches of Milwaukee citizens.

35. Defendant Vagnini was charged with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, ten counts of misconduct in public office, and one count of false imprisonment.

36. In April of 2013, Defendant Vagnini negotiated a plea in which the seven felony sexual assault charges were dismissed, and he pleaded no contest to four felony charges of misconduct in public office and four misdemeanor charges of conducting illegal strip and body cavity searches of African American men.

37. In June of 2013, Defendant Vagnini was sentenced to 26 months in prison and 34 months of extended supervision.

38. In July and October of 2013, the other three Milwaukee police officers pled guilty to various charges related to illegal strip and cavity searches.

### *The City's Knowledge of Unconstitutional Cavity Searches*

39. As early as 2008, the Internal Affairs Division of the Milwaukee Police Department, as well as other authorities within the City of Milwaukee, were aware of numerous complaints about illegal and unconstitutional strip and body cavity searches of citizens.

40. The Internal Affairs Division ignored the clear and obvious pattern of illegal and abusive cavity and strip searches demonstrated by these civilian complaints, repeatedly rejected the complaints as meritless and refused to recommend discipline for the accused officers.

41. Subsequently, Milwaukee Chief of Police Flynn admitted, in April of 2013, that the Department had been receiving complaints for several years before it opened its own investigation of the allegations.

42. Milwaukee Police Department supervisors, including Sergeant Jason Mucha, also had knowledge of the numerous complaints of illegal strip and body cavity searches.

43. Undeterred by this knowledge, the policymakers, including but not limited to Defendants Flynn and Mucha, failed to take any action to train, supervise or discipline the officers who committed these illegal searches.

44. Instead, supervisors rewarded several of the officers who engaged in these illegal searches with commendations for their aggressive police tactics, including commendations from Defendant Flynn.

45. Responsible authorities within the City of Milwaukee, including Defendant Flynn, concealed from the public and from judges, prosecutors and defense counsel that the Milwaukee Police Department had a *de facto* policy and practice which endorsed and encouraged illegal

6

body cavity searches.

46. Following disclosure of the investigation by the Milwaukee District Attorney's Office of Milwaukee police officers for conducting unconstitutional and illegal body cavity and strip searches, the Milwaukee Police Department acknowledged its failure to adequately supervise and train its officers and changed its search policy to require authorization from higher ranking officials for each body cavity and strip search.

### Count I – 42 U.S.C. § 1983
### Unreasonable Search and Seizure

47. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

48. The actions of Defendants Vagnini amd Martinez in illegally searching Plaintiff violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count II – 42 U.S.C. § 1983
### Excessive Force

49. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

50. The actions of Defendants Vagnini and Martinez in physically abusing Plaintiff by hitting him in the head with a flashlight, throwing him out of his wheelchair, and otherwise physically abusing him, constituted unreasonable and excessive force and violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count III – 42 U.S.C. § 1983
### False Arrest

51. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

52. The actions of Defendants Vagnini, Martinez and Mucha, individually, jointly, and in conspiracy, in falsely arresting, searching, and/or imprisoning Plaintiff, without probable

7

cause, violated his Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count IV – 42 U.S.C. § 1983
### Failure to Intervene

53. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

54. In the manner described above, Defendant Mucha had the opportunity, duty and ability to intervene on behalf of Plaintiff during Defendants Vagnini and Martinez's invasive and unreasonable search, unreasonable use of force, and false arrest, but failed to do so and thereby caused the injuries to Plaintiff as set forth above.

### Count V – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of His Constitutional Rights

55. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

56. Defendants Vagnini, Martinez and Mucha, acting within the scope of their employment and under color of state law, agreed between and among themselves to act jointly and in concert in order to deprive Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures, as described in the various paragraphs of this Complaint.

57. In this manner, Defendants Vagnini, Martinez and Mucha conspired by concerted action to accomplish an unlawful purpose by unlawful means.

58. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated the unreasonable search and seizure of Plaintiff and was an otherwise willful participant in the joint activity.

59. As part of this conspiracy, Defendants Vagnini, Martinez and Mucha agreed to conceal from responsible authorities that they had committed, in this case and several others, unlawful body cavity searches.

60. The misconduct described in this Count was undertaken willfully, intentionally, and/or with reckless indifference to Plaintiff's rights.

61. As a direct and proximate result of these Defendants' conspiracy and actions in furtherance of the conspiracy, Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures was violated and he suffered the injuries set forth above.

### Count VI – 42 U.S.C. § 1983
### *Monell* Policy and Practice Claim

62. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

63. The actions of Defendants Vagnini, Martinez and Mucha, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Milwaukee, its Police Department, its Fire and Police Commission, its Internal Affairs Division and/or its Police Chief.

64. At all times material to this complaint Defendant City of Milwaukee and its Police Department, Fire and Police Commission, Internal Affairs Division and/or Police Chief had interrelated *de facto* policies, practices, and customs which included, inter alia, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit unreasonable searches and seizures; b) the police code of silence; and/or c) the encouragement of unreasonable searches and seizures and wrongful arrests.

65. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in

9

criminal cases where they and their fellow officers have falsely arrested and/or unreasonably searched a criminal defendant.

66. The *de facto* policies, practices and customs of failing to properly hire, train, supervise, monitor, discipline, counsel and control police officers, the code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

67. At the time of the incident giving rise to this complaint, officers of the Milwaukee Police Department, as a matter of widespread practice so prevalent as to constitute a municipal policy, abused citizens on a regular basis in a manner similar to the abuse inflicted on Plaintiff, as set forth in this Complaint, yet the Milwaukee Police Department made findings of wrongdoing by officers in an exceedingly small number of cases.

68. Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants by municipal supervisors and policymakers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, further establishes that these acts were part of a widespread municipal policy, practice and custom. This involvement and ratification is further demonstrated, *inter alia*, by the Department's failure for several years to investigate the unconstitutional conduct of the Defendants and other officers, or to discipline them in this or other cases for their unconstitutional conduct.

69. The aforementioned policies, practices and/or customs of failing to hire, train, supervise, monitor, discipline, counsel and control police officers, the police code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests, separately and

together, proximately caused injury to the Plaintiff in this case, *inter alia*, because the Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the Police Chief, Fire and Police Commission, on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct. Although dozens of citizens formally complained to the Milwaukee Police Department, detailing the policy, pattern and practice, for years the Department failed to investigate or take adequate responsive action.

70. But for the belief that they would be protected, both by fellow officers and by the Department, from serious career consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

71. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

## Count VII – 42 U.S.C. § 1983
## Supervisory Liability

72. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

73. Defendants Flynn and Mucha knew or reasonably should have known that Defendants Vagnini and Martinez would violate citizens' constitutional rights in one or more of the ways described above, and/or knew or reasonably should have known that Defendants Vagnini and Martinez had a pattern of engaging in improper searches, including public strip and cavity searches.

11

74. Defendants Flynn and Mucha facilitated, approved, condoned, turned a blind eye to, and/or purposely ignored the Defendant Officers' pattern of misconduct.

75. As a result of this misconduct Plaintiff suffered the damages set forth above.

### Count VIII – Indemnification

76. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

77. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

78. At all times relevant to this action, Defendants Flynn, Mucha, Vagnini and Martinez committed the acts alleged above in the scope of their employment with the City of Milwaukee.

WHEREFORE, Plaintiff Carlando Mukes asks that this Court enter judgment in his favor and against Defendants City of Milwaukee, Chief of Police Edward Flynn, Sergeant Jason Mucha, former Milwaukee Police Officer Michael Vagnini, and Milwaukee Police Officer Paul Martinez, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, CARLANDO MUKES, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: November 11, 2013

Respectfully submitted,

/s/ Ben H. Elson
Ben H. Elson, IL Bar #6286106
John L. Stainthorp, IL Bar #3128243
Jan Susler, IL Bar #277840
Sarah Gelsomino, IL Bar #6298391
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
ben.elson79@gmail.com

Robin Shellow, #1006052
THE SHELLOW GROUP
324 West Vine Street
Milwaukee, WI 53212
(414) 263-4488
tsg@theshellowgroup.com

Attorneys for Plaintiff