UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CARLANDO MUKES,

    Plaintiff,

v.                                      Case No. 13-cv-1268-pp

CITY OF MILWAUKEE, et al.,

    Defendants.

**DECISION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL**

On March 19, 2015, the plaintiff filed an expedited motion, pursuant to Civil Local Rule 7(h), to compel defendant Jason Mucha, a former City of Milwaukee police sergeant, to answer certain questions which he refused to answer at his deposition. Dkt. No. 41. The motion asked the court to compel Mucha to answer questions in five broad categories:

> (1) whether, when, and with whom he received psychological evaluation, diagnosis, and/or treatment before, during and after his active police career; (2) the substance of some of those sessions; (3) his disability application, evaluation, and proceedings, and the allegations that he has made concerning those issues and about his detention by the MPD in the lawsuit that he filed; (4) any medications he was taking before, during and after his police tenure, and during the deposition; and (5) how many and what guns he owned while an MPD officer and when he applied for disability.

Id. at 2.

1

The court held a hearing on the motion on April 27, 2015, and asked the parties to file supplemental briefs further addressing the relevant issues. Dkt. No. 48. The court has considered the parties' briefs, oral arguments, and supplemental briefs, and the court grants in part and denies in part the plaintiff's motion.

**I.      ANALYSIS.**

Categories one through four of the questions the plaintiff asks the court to compel Mucha to answer relate to Mucha's mental health. As to each of those categories of questions, the defendants have argued both relevance and privilege. Accordingly, the court will begin with a brief discussion of the federal patient-psychotherapist privilege.

A.      The Federal Psychotherapist-Patient Privilege.

Because this is a federal question case under 28 U.S.C. § 1331, federal law provides the rules for decision, and any applicable privileges are governed by federal common law. Fed. R. Evid. 501. In <u>Jaffee v. Redmond</u>, 518 U.S. 1, 116 S. Ct. 1923 (1996), the United States Supreme Court concluded that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." <u>Id.</u> at 10, 15, 116 S. Ct. at 1923. <u>Jaffee</u> was a civil rights action arising out of a fatal police shooting. The plaintiff, the administrator of the decedent's estate, argued that the officer's psychological treatment records related to the shooting were subject to discovery. The district court refused to recognize the privilege and

2

Case 2:13-cv-01268-PP   Filed 06/19/15   Page 2 of 19   Document 52

ordered the defendant to produce her treatment records. After the officer was found liable, the Seventh Circuit reversed and remanded for a new trial, concluding that the treatment records were privileged. The Supreme Court recognized the psychotherapist-patient privilege, held that the records were privileged, and affirmed.

The Jaffee court prefaced its analysis by referencing the "fundamental maxim that the public . . . has a right to every man's evidence," but noted exceptions to that rule can be justified "by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Id. at 9, 116 S. Ct. at 1928 (internal quotation marks omitted) (citation omitted). The Supreme Court explained that it recognized the privilege because the success of psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." Id. at 10, 116 S. Ct. at 1928. The privilege advances the goals of psychotherapy, because "disclosure of sensitive communications could cause embarrassment and disgrace and impede the development of a confidential relationship between therapist and patient." United States v. Schwensow, 151 F.3d 650, 657 (7th Cir. 1998).

> B. The Psychotherapist-Patient Privilege Does Not Protect the Fact that Psychological Treatment Occurred, the Dates of the Treatment, and the Identity of the Providers.

The first category of questions the plaintiff wishes the court to compel Mucha to answer concerns "whether, when, and with whom he received

3

Case 2:13-cv-01268-PP   Filed 06/19/15   Page 3 of 19   Document 52

psychological evaluation, diagnosis, and/or treatment before, during and after his active police career."

Neither the Seventh Circuit nor courts in this district directly have addressed the question of whether the scope of the psychotherapist-patient privilege protects the fact that a person sought and received psychological treatment and, if so, the dates of that treatment and the identity of the providers. But courts nationwide are in agreement that *facts* related to the occurrence of treatment are not protected by the privilege, as opposed to *communications* between the psychotherapist and patient regarding diagnosis and treatment.

For example, the Fifth and Sixth Circuits concluded that "the identity of a patient or the fact and time of his treatment does not fall within the scope of the psychotherapist-patient privilege." United States v. Moore, 970 F.2d 48, 50 (5th Cir. 1992) (quoting In re Zuniga, 714 F.2d 632, 640 (6th Cir. 1983); see also Langenfield v. Armstrong World Indus., Inc., 299 F.R.D. 547, 551 (S.D. Ohio 2014) ("The privilege does not . . . cover the patient/psychotherapist's identity, the time of treatment, and/or the fact that any such treatment took place."); United States v. Sturman, No. 96 CR 318, 1998 WL 126066, at *4 n.6 (S.D.N.Y. Mar. 20, 1998) (the psychotherapist-patient privilege "does not extend to information regarding the occurrence of treatment, including "whether a psychotherapist treated [him], the dates of such treatment, and the length of treatment on each date.").

In their brief, the defendants conceded this argument, and agreed to "produce the dates of Officer Mucha's treatment with Doctor Schrinsky and Doctor Feinsilver." Dkt. No. 49, at 1. If the defendants' agreement had resolved the parties' entire dispute as to this category, the court could deny the plaintiff's motion as moot. The motion, however, is not solely limited to Drs. Schrinksy and Feinsilver—it asks the court to compel Mucha to answer questions regarding anyone from whom he received treatment, at any time before, during or after his tenure with the police department. See generally Dkt. No. 41, at 2-3. Accordingly, the court will grant the plaintiff's motion as to this category of information.

> C. The Psychotherapist-Patient Privilege Protects the Substance of Mucha's Communications with Dr. Jay Schrinsky, to the Extent that He Has Not Already Testified About the Substance of Those Communications and They Were Made Without Others Present.

The second category of questions the plaintiff asks the court to compel Mucha to answer relates to "the substance of some of those sessions." In their brief in opposition to this portion of the motion, the defendants argue that "the documents sought are not relevant," "these records are protected by a psychotherapist-patient privilege," and "any probative value associated with psychological care is substantially outweighed by the danger of unfair prejudice and confusion." Dkt. No. 49 at 2. The court notes at the outset that the motion to compel does not ask the court to compel Mucha to produce documents or records. It asks only that that the court compel Mucha to answer questions about the substance of "some" of his therapy sessions.

5

In his supplemental brief, the plaintiff concedes that Mucha did not waive the psychotherapist-patient privilege with regard to the substance of some of his sessions with Dr. Schrinsky—those about which he had not already testified, and those which took place without other people present. Dkt. No. 50, at 2. Accordingly, the court denies the motion to compel Mucha to answer questions about those sessions.

### D. The Psychotherapist-Patient Privilege Does Not Apply to the Treatment Information Supporting Officer Mucha's Application for Disability Benefits.

The third category of information about which the defendants ask the court to compel Mucha to answer questions relates to "his disability application, evaluation, and proceedings, and the allegations that he has made concerning those issues and about his detention by the MPD in the lawsuit that he filed." In his supplemental brief, the plaintiff clarified that this request included asking the court to compel Mucha to answer questions about his sessions with the therapist who conducted the disability evaluation (Dr. Donald Feinsilver), and that therapist's report to the disability board. Dkt. No. 50.

As with the information the plaintiffs sought in category one above, neither the Seventh Circuit nor other courts in this district have addressed whether the psychotherapist-patient privilege applies to treatment information disclosed to a state agency in support of an application for disability benefit applications. Other courts have addressed the issue, however, and they have concluded that a "defendant cannot selectively use his treating psychotherapist's records . . . to obtain disability benefits and then invoke the

6

psychotherapist-patient privilege" to protect those records from disclosure in a separate matter. United States v. Hudson, No. 13–20063–01–JWL, 2013 WL 4768084, at *6 (D. Kan. Sept. 5, 2013).

In Hudson, the defendant admitted that he placed his mental condition at issue in his application for state disability benefits, but argued that he could still assert the privilege in a separate criminal action. The court rejected that argument, explaining that the "[d]efendant made the tactical decision to disclose information on confidential psychotherapy sessions in an attempt to obtain disability benefits from the State of Kansas. He cannot now invoke the psychotherapist-patient privilege to bar the federal government from using the same information to show that he committed a crime." Id. at *4. In support of its decision not to allow the defendant to selectively waive the privilege, the Hudson court cited the Seventh Circuit's decision in Burden-Meeks v. Welch, 319 F.3d 897, 899 (7th Cir. 2003), which rejected the possibility of selective waiver of the attorney-client privilege. Id. The Seventh Circuit concluded, "[k]nowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option." Burden-Meeks, 319 F.3d at 899.

Similarly, a court in the Northern District of Illinois concluded that the privilege does not extend to psychotherapy information contained in a police officer's application for disability benefits. Barmore v. City of Rockford, No. 09-C-50236, 2012 WL 386734, at *3 (N.D. Ill. Feb 7, 2012) (Barmore I). In a report and recommendation, Magistrate Judge Mahoney reasoned that

7

> while [the defendant] had a reasonable expectation
> that the substance of his communications would
> remain out of the general public, it is clear he expected
> some information to be released to some third parties.
> The public interest justifying the privilege also requires
> that the information be exchanged in the course of
> diagnosis or treatment such that it will provide a
> benefit to the community. It is not clear that
> protecting the confidentiality of communications in the
> context of an application for disability benefits rises to
> the same level of public concern as the interests
> described by the Supreme Court in Jaffee.

Id. (internal citation omitted). Accordingly, that court refused to "extend the psychotherapist patient privilege to [the defendant's] communications with psychotherapists in relation to his application for disability." Id. The district court agreed, and held that the defendant's "psychological evaluation related to his disability application" should be disclosed. Barmore v. City of Rockford, No. 09-C-50236, 2012 WL 1660651, at *4 (N.D. Ill. May 11, 2012) (Barmore II).

The defendants respond that the plaintiff has not established that this information is relevant. The defendants argue that (1) the information in Officer Mucha's disability application is outside the time period relevant to Officer Mucha's mental state at the time of the alleged incidents, and (2) the records "do not have any tendency to establish or prove whether [Officer Mucha] engaged in unconstitutional conduct at any point in his tenure." Dkt. 49, at 5. The court disagrees.

Officer Mucha claimed in his disability application that he "suffered major mental trauma" on September 9, 2007 (about 10 months before the date Officer Mucha allegedly assaulted Mukes) and March 20, 2012, because he "was accused of false criminal conduct which was agreed to by the Chief of

8

Police, the Mayor of the City of Milwaukee, and the Common Council President and two aldermen." Dkt. No. 41-4, at 2-4. In the application, Mucha detailed many "mental problems" he suffered, including "significant depression," "psychological trauma," "intense paranoia" and "panic attacks," and stated he did "not want to be in a position where [he] can't assist a citizen that needs help," and "*[couldn't] protect the Constitutional or Civil Rights of innocent persons due to my inability to focus through circumstances and variables that change minute to minute in policing.*" Dkt. No. 41-4, at 17-19, 21 (emphasis added). The plaintiff claims that Mucha failed to adequately supervise officers who allegedly violated the plaintiff's constitutional rights. Mucha's statements in the application foreshadowed the alleged constitutional violations the plaintiff claims to have suffered when Mucha allegedly "stood by watching, and took no action to intervene on Plaintiff's behalf[.]" Dkt. 1, at ¶23. Thus, the information in the application is relevant to the claims in the complaint.

The court further concludes that the information supporting Mucha's disability application is not privileged. In 2012, Mucha voluntarily disclosed his mental health treatment information to the City of Milwaukee Employees' Retirement System with the goal of obtaining disability benefits. The court agrees with the Hudson court's rationale that, because Mucha "voluntarily submitted an application for benefits which included his mental health records to a third party, he has waived the psychotherapist-patient privilege as to those records." Hudson, 2013 WL 4768084, at *4. If the court held otherwise, it would result in a selective waiver of the privilege, which would allow Mucha to

9

personally benefit by disclosing certain of his psychiatric treatment records in exchange for disability payments, while denying the plaintiff access to potentially relevant evidence.

The defendants' attempts to distinguish Hudson and Barmore miss the mark. The defendants argue that the Hudson court "ruled that the defendant had waived the psychotherapist privilege as to all documents defendant disclosed to confidential informant. In this case, Plaintiff is **already** in possession of Office Mucha's Disability Application, requiring no further action on behalf of defendants." Dkt. No. 49, at 6. The court assumes that the bolded, underlined "already" in the defendants' pleading is meant to convey the argument that the Hudson court's decision was confined to deciding whether or not the party claiming privilege ought to be required to disclose the disability application at all. While it isn't completely clear, it appears that the defendants are arguing that because the plaintiff already has Mucha's disability application itself, the reasoning in Hudson should not be applied to the question of whether Officer Mucha ought to have to answer questions about that application. The court disagrees.

While it is true that the Hudson court stated that the party who "made the tactical decision to disclose information on confidential psychotherapy sessions" to a disability board by applying for benefits had "waived the psychotherapist-patient privilege *as to those records,*" Hudson, 2013 WL 4768084 at *4 (emphasis added), the Hudson court's reasoning applies equally to communications made to a psychotherapist for the purpose of obtaining

10

benefits. Mucha's purpose in visiting Dr. Feinsilver was to obtain benefits, not to obtain treatment. To allow Mucha to engage in those communications in order to obtain benefits, and then allow him to refuse to answer questions about those communications in a litigation setting, would be to allow him to "selectively use" those communications—a picking and choosing exercise which the Hudson court prohibited.

As to Barmore, the defendants argue that while the Barmore II court mentioned the psychological evaluation, "the entirety of the court's analysis addresses the fitness for duty application, not the psychological evaluation." Dkt. No. 49, at 6. The defendants point to the judge's language that "the fitness evaluation [is] categorically different from a psychological evaluation for purposes of medical diagnosis and treatment. In the latter, an officer is a patient deciding to get well. In the former he is an employee hoping to keep his job." Barmore II, 2012 WL 1660651, at *3. Relying on this distinction, the defendants argue that this court ought to reject the Barmore I court's holding that "[the defendant's] communications with psychologists or psychotherapists relating to his application for disability benefits are not privileged . . . ." Barmore I, 2012 WL 386734 at *4.

This court again disagrees. In Barmore I, the magistrate judge expressly found that the psychotherapist-patient privilege did not extend to psychiatric evaluations that the City ordered the officer to undergo in connection with his application for disability benefits. Id. at *3. The portion of the decision that related to the officer's application for disability benefits is distinct from the

11

court's analysis of the fitness for duty evaluations, which the magistrate judge addressed separately. Id. at *1-3. In Barmore II the district court agreed with the magistrate judge's conclusions on both issues. Barmore II, 2012 WL 1660651, at *4.

Accordingly, the court will grant the plaintiff's motion to compel Mucha to answer questions relating to his disability application, evaluation and proceedings.

> E. Mucha's Prescription Medication is Not Protected by the Psychotherapist-Patient Privilege, but Only the Prescriptions He Had, and the Medications He Was Taking, at the Time of the June 2008 Incident Are Relevant.

In the original motion to compel, the plaintiff complained regarding the fourth category of questions that Mucha refused to answer questions about "any medication he was taking before, during and after his police tenure, and during the deposition." Dkt. No. 43, at 2. At oral argument on this motion, the plaintiff clarified that he was asking the court to compel Mucha to ask questions about any *mental health* medication (not any and all medication of any sort). In the supplemental brief, the plaintiff argues that the court should compel Officer Mucha to answer questions related to "prescribed medication related to mental health treatment or the seeking of mental health treatment." Dkt. No. 50, at 5.

The plaintiff contends that this information is relevant to "issues of hiring, job related stress, judgment, capacity, and comprehension at the deposition." Dkt. No. 41, at 3. The defendants respond that the plaintiff has

12

not demonstrated "that any medication Officer Mucha was prescribed, at any time, has any relevance to the subject matter of the action." Dkt. No. 49, at 8. The defendants also argue that "any medical prescriptions Officer Mucha received as a result of his therapy, if any, is [sic] privileged for the same reasons the substance of his therapy discussions is privileged . . . ." Id. at 9. For this proposition, the defendants cite Gomes v. Lake County, Ill., No. 12-C-4439, 2013 WL 2156042 (N.D. Ill., May 15, 2013)—a case the court asked the defendants to discuss.

The defendants have agreed to disclose whether Officer Mucha had taken any medication on the day of his deposition. The court is not clear on whether the defendants also have agreed to disclose what medication Officer Mucha took, if any, on the day of the deposition, but the court finds that that information is relevant. It is relevant for the plaintiff to know whether Officer Mucha had taken anything that might have affected his ability to answer deposition questions accurately and reliably.

The plaintiff seeks more information than whether, and what, medication Officer Mucha took on the day of the deposition. He also asks the court to compel Mucha to answer questions about any "prescribed medication related to mental health treatment or the seeking of mental health treatment." Dkt. No. 50, at 5. The defendants argue that this information is irrelevant; the court disagrees. The court finds that information about whether Officer Mucha had been prescribed mental health medication, and whether he was taking that medication, is relevant to the incident described in the complaint. The

13

complaint alleges that Mucha, who supervised the officers involved in the events of June 13, 2008, knew of the complaints of cavity searches and strip searches and failed to take action, as well as failing to train, supervise or discipline the involved officers. Information about whether Mucha was taking mental health medication—or had been prescribed such medication but had failed to take it—is relevant to Mucha's state of mind, decision-making ability and judgment.

The court agrees with the defendants, however, that the relevance of this information is confined to whether Mucha had mental health medication prescribed to him at the time of the June 2008 incident, and to whether he was taking any such medication at that time. Whether he was prescribed, or took, such medication before or after "his police tenure," as the original motion to compel put it, is not relevant to his state of mind at the time of the incident.

Having resolved the relevance issue, the court turns to the defendants' argument that "any medical prescriptions Officer Mucha received as a result of his therapy, if any, is [sic] privileged . . . ." The court had, at the hearing on this motion, asked the defendants to comment on Gomes v. Lake County, Ill., No. 12-C-4439, 2013 WL 2156042 (N.D. Ill., May 15, 2013), and they cite this case for the proposition that Mucha's prescriptions "received as a result of his therapy, if any," are privileged. The defendants read Gomes too broadly.

The Gomes court held that the psychotherapist-patient privilege applied only to *communications* between the therapist and the patient, including "the therapist's notes of those communications and her observations, conclusions

14

or opinions based on those private communications." Id. at *2, citing United States v. White, 950 F.2d 426, 430 (7th Cir. 1991) and In re Walsh, 623 F.2d 489, 498 (7th Cir. 1980). As a result, the court concluded that information about a mental health patient's prescriptions was not "covered by the psychotherapist-patient privilege *unless it is referenced in the therapist's notes or communications with the patient.*" Id. (emphasis added). The court did not hold that any prescriptions a patient received as a result of therapy were privileged. Rather, it held only that any *communications* between the psychotherapist and the patient about prescription medications are privileged. Because Jaffee created a privilege for any communications between a psychotherapist and a patient, it is logical that that privilege would include communications about prescription medication.

To the extent that the motion to compel asks the court to compel Mucha to answer questions about the substance of therapy sessions, the court has ruled on that request. It has denied the motion to compel him to answer questions regarding the substance of his sessions with Dr. Schrinsky, and has granted the motion to compel with regard to the substance of his sessions with Dr. Feinsilver. To the extent that the motion to compel asks the court to compel Mucha to answer questions about what mental health medication prescriptions he had, and what prescribed mental health medications he was or was not taking at the time of the June 2008 incident, the court will grant the motion.

15

F. Certain Information Related to Officer Mucha's Possession
or Ownership of .308 Caliber Ammunition or Guns that
Use .308 Caliber Ammunition is Relevant.

The last category of questions the plaintiff asks the court to compel Mucha to answer concerns "how many and what guns he owned while an MPD officer and when he applied for disability." In Mucha's deposition, the plaintiff's lawyer asked a series of questions related to the number and types of guns Mucha owned. Mucha refused to answer many of those questions on relevance grounds; he did not assert any privilege. Given the subject matter at issue, the court concludes that if the defendants believed the questions were being asked to unreasonably annoy, embarrass or oppress Mucha, the better procedure would have been for the defendants to use the procedures laid out in Fed. R. Civ. P. 30(d)—move to terminate or limit the deposition—not for Mucha to refuse to answer questions about his gun ownership. There are questions as to whether it is proper for a witness to refuse to answer questions in a deposition, or for counsel to advise a witness to do so.

Be that as it may, the substantive issue the plaintiff raises in the motion to compel is this one: the plaintiff asks the court to compel Mucha to answer questions "about what guns he owned." He argues that Mucha's gun possession is relevant to whether Mucha was involved in placing a .308 caliber bullet in the locker of Officer Zachary Thoms, who was branded a snitch after cooperating with the Milwaukee County D.A.'s investigation into illegal strip and body cavity searches by the Milwaukee police, "as well as to his propensity for violence." Dkt. No. 41, at 3. The plaintiff argues that a bullet was placed in

16

Officer Thoms' locker, and that Mucha possessed many guns that the time. Id. at 1. The plaintiff's clear implication is that Mucha may have owned a gun using .308 caliber ammunition, or may have owned such ammunition, and intended to intimidate Officer Thoms by placing a .308 caliber bullet in Officer Thoms' locker.

The court concludes that whether Mucha attempted to intimidate officers within his department from exposing police misconduct by gestures, such as the .308 caliber bullet allegedly placed in Officer Thoms' locker, is relevant to the plaintiff's Monell claim. The plaintiff does not know who placed that bullet in Officer Thoms' locker, but believes it could have been Mucha. The court concludes that whether Mucha ever possessed or owned .308 caliber ammunition or a gun that could use such ammunition is relevant to the question of whether it could have been Mucha.

The court does not agree, however, that the question of whether Mucha privately owned other guns is relevant to whether he failed to appropriately supervise the officers under his command, was fit to supervise other officers, had a propensity for violence (as the plaintiff argued), or is liable for the plaintiff's injuries. Even under the broad relevance standard applicable in discovery, the court does not find a basis to conclude that whether Mucha had "access to an arsenal of private weapons" is relevant to whether he was fit "to be an MPD supervisor." Dkt. No. 50, at 7.

Therefore, the court will grant the plaintiff's motion to the extent that the plaintiff asks the court to compel Mucha to answer questions regarding

17

Case 2:13-cv-01268-PP   Filed 06/19/15   Page 17 of 19   Document 52

whether he possessed or owned .308 caliber ammunition or a gun that could use such ammunition, but will deny the plaintiff's motion to the extent that he seeks to inquire generally into the number and types of weapons Mucha owns or has owned.

## II.     CONCLUSION.

Accordingly, the court **GRANTS IN PART** the Plaintiff's Motion to Compel, and **ORDERS** that Mucha (1) answer questions about whether Mucha received psychotherapy treatment (not just from Dr. Schrinsky and Dr. Feinsilver—from anyone else) and, if so, the dates of that treatment and the providers; (2) answer questions about his application to the City of Milwaukee Employees' Retirement System for disability benefits, and about the evaluation conducted by Dr. Feinsilver; (3) answer questions about his prescriptions for mental health medication, and about what prescription medications he was or was not taking at the time of the June 2008 incident; (d) answer questions about whether he possessed or owned .308 caliber ammunition or a gun that could use such ammunition. The court **DENIES IN PART** the Plaintiff's Motion to Compel Mucha to answer questions about (1) the substance of his psychotherapy treatment unrelated to his application for disability benefits, and (2) his possession and ownership of guns except as ordered above.

**ORDERED** at Milwaukee this 19th day of June, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge